PD-1275-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 9/25/2015 2:26:33 PM
Accepted 9/30/2015 11:43:07 AM
ABEL ACOSTA
CLERK

PD-1275-15

NO._____

IN THE
TEXAS COURT OF CRIMINAL APPEALS

THE STATE OF TEXAS, Petitioner

v.

TOM BENSON, Respondent

No. 03-15-00121-CR
In the Court of Appeals for the
Third District of Texas at Austin
No. C-1-CV-14-002294
County Court at Law No. 7
Travis County, Texas

## PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

September 30, 2015

ABEL ACOSTA, CLERK

Tim Labadie
Assistant Travis County Attorney
State Bar No. 11784853
P.O. Box 1748
Austin, Texas 78767
(512) 854-5864
(512) 854-9316 (fax)
tim.labadie@traviscountytx.gov

Attorney for the State of Texas, Petitioner

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................i

IDENTITY OF JUDGE, PARTIES, AND COUNSEL ......................................iii

INDEX OF AUTHORITIES.........................................................................iv

STATEMENT REGARDING ORAL ARGUMENT...........................................1

STATEMENT OF THE CASE......................................................................2

STATEMENT OF PROCEDURAL HISTORY...................................................3

QUESTION PRESENTED FOR REVIEW .......................................................3

REASONS FOR GRANTING REVIEW ..........................................................4

ARGUMENT..........................................................................................4

    1. THE ISSUE: IS THE PRINCIPAL'S RETURN TO THE COUNTY OF PROSECUTION AN ELEMENT OF THE INCARCERATION EXONERATION? ...............................................................................4

    2. THE PURPOSE OF ARTICLES 22.13(A)(5) AND 22.13(B) IS TO GIVE THE SURETY FINANCIAL INCENTIVE TO RETURN THE PRINCIPAL TO THE COUNTY OF PROSECUTION ...................................................5

    3. THE COURT CAN CONSIDER THE LEGISLATIVE HISTORY OF ARTICLE 22.13 .......................................................................................11

    4. GENERALLY, A REDUCTION OF THE SURETY'S LIABILITY REQUIRES THE PRINCIPAL'S RETURN.........................................................14

PRAYER FOR RELIEF ...........................................................................18

CERTIFICATE OF COMPLIANCE .............................................................19

CERTIFICATE OF SERVICE ...................................................................................19

APPENDIX ................................................................................................... post

# IDENTITY OF JUDGE, PARTIES, AND COUNSEL

**TRIAL JUDGE:**

Honorable Todd Wong –County Court at Law No. 1, Travis County, Texas

**PARTIES TO THE JUDGMENT:**

The State of Texas (Plaintiff)
Brian Roy Whipple (Principal-Defendant)
Tom Benson (Surety-Defendant)

**TRIAL AND APPELLATE COUNSEL:**

Tim Labadie
Assistant Travis County Attorney
P. O. Box 1748
Austin, Texas 78767
Counsel for the State of Texas

Tom Benson
900 Jackson St., Suite 750
Dallas, Texas 75202
Pro se

Brian Roy Whipple did not appear in the trial court nor in the court of appeals.

# INDEX OF AUTHORITIES

Page

**CASES**

*Armadillo Bail Bonds. v State,*
    802 S.W.2d 237 (Tex. Crim. App. 1990) .......................................................9

*Benson v. State,*
    No. 03-15-00121-CR, 2015 Tex. App. LEXIS 9238
    (Tex. App.—Austin, Aug. 31. 2015) .................................................9, 11, 15

*Boykin v. State,*
    818 S.W.2d 782 (Tex. Crim. App. 1991) ...........................................5, 6, 11

*Chase v. State,*
    448 S.W.3d 6 (Tex. Crim. App. 2014) .......................................................12

*Ex parte Reis,*
    117 Tex. Crim. 123, 33 S.W. 2d 435 (1930) .................................................6

*Ex parte Vasquez,*
    558 S.W.2d 477 (Tex. Crim. App. 1977) .....................................................6

*Gramercy Insurance Co.  v State,*
    834 S.W.2d 379 (Tex. App.-San Antonio 1992, no pet.).....................7, 17

*Grimes County Bail Board v. Ellen,*
    267 S.W.3d 310 (Tex. App.-Houston [14th Dist.] 2008, pet. denied.) ...7

*Hardy v. State,*
    281 S.W.3d 414 (Tex. Crim. App. 2009) .....................................................6

*Lyles v State,*
    850 S.W.2d 497 (Tex. Crim. App. 1993) .....................................................9

*Makeig v. State,*
　　802 S.W.2d 59 (Tex. Crim. App. 1990) ......................................................8

*McKenna v State,*
　　247 S.W.3d 716 (Tex. Crim. App. 2008) .......................................6, 7, 8, 17

*Safety National Casualty Corp. v State,*
　　273 S.W.3d 157 (Tex. Crim. App. 2008) ................ 5, 7, 8, 9, 10, 11, 12, 15

*State v Matyastik,*
　　811 S.W.2d 102 (Tex. Crim. App. 1991) .....................................................9

## **STATUTES**

TEX. CODE CRIM. PROC. art. 17.01 .............................................................................6

TEX. CODE CRIM. PROC. art. 17.02 .............................................................................6

TEX. CODE CRIM. PROC. art. 17.08 .............................................................................6

TEX. CODE CRIM. PROC. art. 22.13 ......................................................7, 8, 9, 11, 14

TEX. CODE CRIM. PROC. art. 22.13(a)(1)...........................................................8, 14

TEX. CODE CRIM. PROC. art. 22.13(a)(2)...........................................................8, 14

TEX. CODE CRIM. PROC. art. 22.13(a)(3)................................................8, 14, 15, 16

TEX. CODE CRIM. PROC. art. 22.13(a)(4)...........................................................8, 14

TEX. CODE CRIM. PROC. art. 22.13(a)(5)......... 2, 5, 6, 7, 8, 9, 10, 11, 14, 15, 16, 17

TEX. CODE CRIM. PROC. art. 22.13(a)(5)(A) ................................3, 4, 5, 12, 13, 14

TEX. CODE CRIM. PROC. art. 22.13(b) ......... 2, 3, 5,6,  7, 8, 9, 10, 11, 12, 13, 14, 15

TEX. CODE CRIM. PROC. art. 22.16 ..........................................................8, 9, 15, 16

TEX. CODE CRIM. PROC. art. 22.16(a) ..................................................................15, 16

TEX. CODE CRIM. PROC. art. 22.16(b) ........................................................................16

TEX. CODE CRIM. PROC. art. 22.17 ...............................................................8, 16, 17

TEX. CODE CRIM. PROC. art. 22.17(a) ......................................................................17

TEX. GOV'T CODE § 311.021(2)..................................................................................12

TEX. GOV'T CODE § 311.023 .......................................................................................6

## **OTHER**

SENATE COMM. ON CRIMINAL JURISPRUDENCE, BILL ANALYSIS,
Tex. S.B. 1336, 78th Leg., R.S. (2003)..................................................................10

NO._____

IN THE
TEXAS COURT OF CRIMINAL APPEALS

_____

THE STATE OF TEXAS, Petitioner

v.

TOM BENSON, Respondent

_____

No. 03-15-00121-CR
In the Court of Appeals for the
Third District of Texas at Austin
No. C-1-CV-14-002294
County Court at Law No. 7
Travis County, Texas

_____

**PETITION FOR DISCRETIONARY REVIEW**

_____

TO THE HONORABLE COURT OF CRIMINAL APPEALS OF TEXAS:

The State of Texas petitions the Court to review and reverse the

judgment of the Austin Court of Appeals, which reversed the trial court's

judgment and remanded the case to the trial court.

**STATEMENT REGARDING ORAL ARGUMENT**

Oral argument would be helpful to resolve whether a principal-

defendant must be returned to the county of prosecution before a surety's

-1-

liability for the forfeiture of the appearance bond is limited by articles 22.13(a)(5) and 22.13(b). This is a question of first impression in this Court in an area of law rarely addressed by the Court. At oral argument, the Court would be able to draw upon the experience and knowledge of both the State's attorney and the bondsman in order to better understand the inner workings of bail bonds, the law applicable to bail bonds, and the impact the Court's decision will have on this integral part of our criminal justice system.

## STATEMENT OF THE CASE

On August 29, 2013, Brian Roy Whipple, as Principal, and Tom Benson, as Surety, executed an appearance bond payable to the State of Texas in the amount of $5,000.00.[1] This bond was conditioned on Mr. Whipple's personal appearance on a misdemeanor charge pending in Travis County.[2] On February 14, 2014, Brian Whipple failed to appear in court and the bail bond was forfeited.[3]

In answering the bond forfeiture suit, Tom Benson did not deny the making and the forfeiture of the bond. Instead, he asserted that Mr.

---

[1] CR 4,5.
[2] CR 4,5.
[3] CR 4.

Whipple was incarcerated in Las Vegas, Nevada within 180 days of his failure to appear in Travis County, claiming that this provided him a defense to liability under article 22.13(a)(5)(A) of the Texas Code of Criminal Procedure.[4] Mr. Benson did not allege or present evidence that Mr. Whipple ever returned to Travis County.

On January 21, 2015, the trial court granted Plaintiff's Motion for Summary Judgment and rendered judgment against Brian Whipple and Tom Benson for the full amount of the bond ($5,000.00) plus court costs.[5]

## STATEMENT OF PROCEDURAL HISTORY

In a decision rendered on August 31, 2015, a panel of the Third Court of Appeals reversed the judgment of the trial court and remanded the case. The State did not file a Motion for Rehearing in the Third Court of Appeals.

## QUESTION PRESENTED FOR REVIEW

Whether the principal-defendant's return to the county of prosecution is an element of a surety's exoneration defense to bond forfeiture liability under articles 22.13(a)(5)(A) and 22.13(b) of the Texas Code of Criminal Procedure?

---

[4]     CR 14.
[5]     CR 24-25.

## REASONS FOR GRANTING REVIEW

While the issue in this case had never been directly addressed by any Texas court before the decision of the court of appeals, its resolution was suggested by this Court in a manner that directly conflicts with the decision of the court of appeals. This is an important issue pertaining to the law of bond forfeitures that has not been, but should be, settled by this Court.

## ARGUMENT

**1. THE ISSUE: IS THE PRINCIPAL'S RETURN TO THE COUNTY OF PROSECUTION AN ELEMENT OF THE INCARCERATION EXONERATION?**

Tom Benson has never denied that he and Brian Whipple made a $5,000.00 appearance bond or that this bond forfeited because Mr. Whipple failed to appear in court in Travis County or that Mr. Whipple has never returned to the Travis County criminal justice system. Instead, Mr. Benson invoked the incarceration exoneration found in articles 22.13(a)(5)(A) and 22.13(b) of the Texas Code of Criminal Procedure, which provide:

> (a) The following causes, and no other, will exonerate the defendant and his sureties, if any, from liability upon the forfeiture taken:
>
> .    .    .
>
> > 5. The incarceration of the principal in any jurisdiction in the United States:

(A) in the case of a misdemeanor, at the time of or not later than the 180th day after the date of the principal's failure to appear in court[.]

(b) A surety exonerated under Subdivision 5, Subsection (a), remains obligated to pay costs of court, any reasonable and necessary costs incurred by a county to secure the return of the principal, and interest accrued on the bond amount from the date of the judgment nisi to the date of the principal's incarceration.

Tex. Code Crim. Proc. articles 22.13(a)(5)(A) & 22.13(b).

The State contends, based in part on this Court's decision in *Safety National Casualty Corp. v. State*, 273 S.W.3d 157, 163 (Tex. Crim. App. 2008), that article 22.13(a)(5)'s exoneration is contingent on the principal's return to the county where the forfeiture occurred because article 22.13(b) imposes liability on the surety for the costs incurred by that county in returning the principal. Mr. Benson argues, and the Austin court of appeals holds, that a surety is exonerated upon the principal's incarceration without regard to his or her return to the county of prosecution.

**2.    THE PURPOSE OF ARTICLES 22.13(A)(5) AND 22.13(B) IS TO GIVE THE SURETY FINANCIAL INCENTIVE TO RETURN THE PRINCIPAL TO THE COUNTY OF PROSECUTION**

To resolve this issue, the Court must engage in statutory construction of articles 22.13(a)(5) and 22.13(b) in order to determine their fair and objective meaning at the time of their enactment. *Boykin v. State,* 818 S.W.2d

782, 785 (Tex. Crim. App. 1991). Initially, the Court must consider the literal text read in light of the rules of statutory construction, such as those found in Chapter 311 of the Government Code. *Hardy v. State*, 281 S.W.3d 414, 422 (Tex. Crim. App. 2009). If the statute is ambiguous or application of its plain language would lead to absurd consequences, the Court should not literally construe the statute and can consider other sources, such as legislative history, to determine the meaning of the statute. *Boykin v. State,* 818 S.W.2d at 785-86. *See also*, Tex. Gov't Code §311.023.

In determining the meaning of articles 22.13(a)(5) and 22.13(b), the Court must bear in mind that the purpose of bail is to secure the principal's appearance in court so that the criminal charges against him or her can be resolved. *McKenna v State*, 247 S.W.3d 716, 719 (Tex. Crim. App. 2008); *Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977); *Ex parte Reis,* 117 Tex. Crim. 123, 127, 33 S.W.2d 435, 437 (1930).[6]

---

[6]     *See also,* Tex. Code Crim. Proc. art. 17.01 (bail is defined as "the security given by the accused that he will appear and answer before the proper court the accusation brought against him."); *id.* art. 17.02 ("A 'bail bond' is a written undertaking [by the principal and surety] for the appearance of the principal . . . to answer a criminal accusation."); *id.* art. 17.08 (a bail bond must contain a promise by the principal and surety promise that the principal will appear before the proper court to answer the accusation against him).

In light of this purpose, the law mandates that the principal's nonappearance normally will result in the total forfeiture of the bond amount. *McKenna v State*, 247 S.W.3d at 719. Even after forfeiture, the State's primary concern is the principal's appearance, not collecting the bond amount. *See*, *Gramercy Insurance Co. v. State*, 834 S.W.2d 379, 381-82 (Tex. App.–San Antonio 1992, no pet) (a bail bond is not intended to function as a revenue device for the government). Indeed, the presence of a bail bond protects the public interest in having the principal appear in court by encouraging the surety's participation in the return of the principal. *Grimes County Bail Bond Board v. Ellen*, 267 S.W.3d 310, 317 (Tex. App.–Houston [14th Dist.] 2008, pet. denied).

The exoneration based on the post-forfeiture incarceration of the principal found in articles 22.13(a)(5) and 22.13(b) was added to Chapter 22 of the Code of Criminal Procedure in 2003. *Safety National*, 273 S.W.3d at 160. Prior to that time, article 22.13 recognized just four causes for exoneration; all of which resulted in a complete exoneration, and none of which focused on the principal's post-forfeiture conduct.[7] While, prior to

---

[7] These causes are invalid and non-binding bond, death of the principal before the forfeiture, sickness of the principal or some other uncontrollable circumstance, and

2003, Chapter 22 contained other mechanisms[8] allowing a trial court, in its discretion, to reduce the surety's liability when the principal was returned to the county of prosecution, these were contingent on the surety showing good cause for the principal's failure to appear and that the surety participated in the return of the principal to the county of prosecution. *McKenna v State*, 247 S.W.3d at 719; *Makeig v. State*, 802 S.W.2d 59, 62-63 (Tex. Crim. App. 1990).

By enacting articles 22.13(a)(5) and 22.13(b), the Legislature created a less than total exoneration, not based on good cause for the failure to appear, but on the principal's post-forfeiture incarceration. Shortly after this cause for exoneration was added to article 22, the State argued to this Court that article 22.13(a)(5) violates the separation of powers provision in the Texas Constitution.[9] *Safety National Casualty Corp. v. State*, 273 S.W.3d

---

failure to present an indictment or information at the first term of court after bail made. Tex. Code Crim. Pro. art. 22.13(a)(1)-(4).

[8] These mechanisms are remittitur under article 22.16 and the special bill of review under article 22.17. Article 22.16 was also amended in 2003, but article 22.17 remains the same.

[9] The State argued that article 22.13(a)(5) was unconstitutional because it effectively prohibits the entry of a judgment for 180 days (or 270 days for a felony). To fully understand and appreciate the issue facing the Court, one must know a bit of the history of articles 22.13 and 22.16. Prior to June 2003, article 22.13 listed four situations, not including incarceration, in which the principal and the surety would be completely exonerated from liability for a bond forfeiture. Article 22.16, on the other hand, provided five situations, including the principal's incarceration, where the surety's

157 (Tex. Crim. App. 2008). Envisioning the unjust consequences of the construction given to article 22.13(a)(5) by the Austin court of appeals, the State complained to this Court that the surety would be exonerated even if the principal were arrested elsewhere on other charges but not returned to the county of prosecution. *Safety National*, 273 S.W.3d at 163. The Court, calming the State's fears, found this construction of article 22.13(a)(5) "simply incorrect" because article 22.13(b) imposes liability on the surety to pay the costs incurred by a county to secure the principal's return. *Id.* Thus, this Court limited the incarceration exoneration to situations where the principal's return to the county of prosecution is certain.[10] *Id.*

---

liability would be limited to court costs, return costs, and interest on the bond. Article 22.16 also placed time constraints on a court entering judgment in the bond forfeiture suit (9 months for a misdemeanor, 18 months for a felony). In *Armadillo Bail Bonds v. State* 802 S.W.2d 237 (Tex. Crim. App. 1990), *State v. Matyastik*, 811 S.W.2d 102 (Tex. Crim. App. 1991), and *Lyles v. State,* 850 S.W.2d 497 (Tex. Crim. App. 1993), the Court held that these time constraints violated the separation of powers provision of the Texas Constitution. Even so, the Legislature did not attempt to fix the problem until 2003, at which time it removed the time constraints from article 22.16 and moved to article 22.13 the limitation on liability because of the principal's incarceration. In this context, the State in *Safety National* argued that the 180/270 day provisions of article 22.13 were similar to the 9/18 month provisions that had been ruled unconstitutional. The Court disagreed finding no requirement in article 22.13 that the court wait any amount of time before taking a judgment. Safety National Cas. Corp. v. State, 273 S.W.3d at 164.

[10]    Contrary to the Austin court's assertion, a principal's return to Texas is not certain simply because he is incarcerated in another state. Benson v. State, 2015 Tex. App. LEXIS 9238 at *10. Mr. Whipple is a prime example. While Mr. Benson presented some evidence that Mr. Whipple was incarcerated in Nevada, there is no evidence that either Mr. Benson or the State knew of this incarceration while Mr. Whipple remained

Articles 22.13(a)(5) and 22.13(b) were added to Chapter 22 in 2003

because:

> . . . *the state is more interested in having the defendant appear* than in receiving forfeited bond money. Setting time limits on when bonds would be forfeited would result in *more defendants ultimately appearing in court* because bondsmen would have a *financial incentive to produce the principal* many weeks after he or she originally failed to appear in court . . . [and] would give bondsmen consistency for principals who were incarcerated, while allowing a judge to adjust the time period as needed in a particular case. SENATE COMM. ON CRIMINAL JURISPRUDENCE, BILL ANALYSIS, Tex. S.B. 1336, 78th Leg., R.S. (2003).

Quoted in *Safety National Casualty Corp. v. State, 273 S.W.3d 157, 162-63*

(Tex. Crim. App. 2008) (emphasis added).

Thus, articles 22.13(a)(5) and 22.13(b) serve the bond's purpose of securing the principal's appearance in court even after the principal's nonappearance by giving the surety a financial incentive (i.e., reduced liability) to return the principal to the county of prosecution. The Austin court of appeals, however, abrogates the bond's purpose by rewarding Mr. Benson with very limited liability for breaking his promise to insure Mr. Whipple's appearance in Travis County simply because Mr. Whipple was

---

in custody. Consequently, Mr. Whipple has never returned to the custody of Travis County or any other county in Texas.

incarcerated in Nevada, even though Mr. Whipple was not returned to Travis County. Moreover, there is no evidence that Mr. Benson was instrumental in Mr. Whipple's arrest in Nevada, that Mr. Benson informed Travis County of Mr. Whipple's arrest while he still was in custody so that Mr. Whipple might be extradited to Texas, or that Mr. Benson or the State even knew of the incarceration at the time it occurred.

Surely, this is not what the Legislature intended when it added articles 22.13(a)(5) and 22.13(b) to the body of law governing bail bonds.

**3.    THE COURT CAN CONSIDER THE LEGISLATIVE HISTORY OF ARTICLE 22.13**

The Austin court of appeals refused to consider the bill analysis cited above and relied on by this Court in *Safety National* because it concluded, without any analysis and in a footnote, that article 22.13 is not ambiguous. *Benson v. State*, No. 03-15-00121-CR, 2015 Tex. App. LEXIS 9238, at *10 n.3 (Tex. App.—Austin, Aug. 31. 2015). This Court has recognized two situations where it will consider legislative history in construing a statute: when that statute is ambiguous or when application of the plain language would lead to an absurd result. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

A statute is ambiguous when it is "reasonably susceptible to more than one understanding." *Chase v. State*, 448 S.W.3d 6, 11 (Tex. Crim. App. 2014). Reading article 22.13(a)(5)(A) alone, one could conclude that the principal's return is not necessary to trigger exoneration. However, it is reasonable to conclude that the principal must be returned to the county of prosecution before the exoneration is triggered when articles 22.13(a)(5)(A) and 22.13(b) are read together, as the rules of statutory construction demand. Tex. Gov't Code §311.021(2). Indeed, as mentioned above, this Court suggests this very construction in *Safety National Casualty Corp. v. State*, 273 S.W.3d 157 (Tex. Crim. App. 2008). Thus, articles 22.13(a)(5)(A) and 22.13(b) are ambiguous.

Additionally, the construction given to articles 22.13(a)(5)(A) and 22.13(b) by the court of appeals leads to absurd results. First, it allows the surety to take advantage of article 22.13(b)'s greatly reduced liability without requiring the return of the principal to the county of prosecution, thereby defeating the purpose of the bail bond.

Second, if the court of appeals is correct, the resolution of the bond forfeiture suit and the underlying criminal case will be delayed, and perhaps never resolved, since the surety no longer has an incentive to seek

the return of the principal. Instead, the Austin court has given the surety an incentive to not have the principal returned to the county of prosecution so as to avoid liability for the return costs.

The decision of the court of appeals forces the State to choose, in those cases where the principal is not returned to the county of prosecution, between a timely resolution of the bond forfeiture suit, without collecting return costs, or leaving the bond forfeiture suit pending until the principal returns, which may never happen, in order to collect the return costs. Under the first choice, the State runs the risk of bearing the costs of return, when the Legislature intended those costs to be borne by the surety, if the principal returns after the resolution of the bond forfeiture suit. Under the second choice, the State runs the risk that the suit will never be resolved because the principal never returns or that the surety will no longer be in business or solvent upon the principal's return.

Thus, the Court can and should look to the legislative history to determine the fair and objective meaning of these provisions. For, in doing so, the Court will see that the Legislature did not intend articles 22.13(a)(5)(A) and 22.13(b) to apply to a fortuitous incarceration in another

state on another charge that does not result in the principal's return to the county of prosecution.

### 4. GENERALLY, A REDUCTION IN THE SURETY'S LIABILITY REQUIRES THE PRINCIPAL'S RETURN

The incarceration exoneration under articles 22.13(a)(5) and (b) is but one of several mechanisms available to the surety to minimize its bond forfeiture liability, most of which require the return of the principal to the county of prosecution.[11] For example, a surety is completely exonerated from liability if the principal was prevented from appearing because he was sick or because of an uncontrollable circumstance, provided that the principal had no fault in causing the situation that prevented his appearance. Tex. Code Crim. Proc. art. 22.13(a)(3).

Before the surety can take advantage of this exoneration, the principal must "appear before final judgment on the bond to answer the accusation against him, or show sufficient cause for not so appearing." Tex. Code Crim. Proc. art. 22.13(a)(3). Because similar language is not found in article 22.13(a)(5)(A), the court of appeals held that the principal's return is

---

[11] There are three causes for exoneration under article 22.13 that do not require the return of the principal: when the bond is invalid and not binding (article 22.13(a)(1)), when the principal dies before the forfeiture occurs (article 22.13(a)(2)), and when an indictment or information is not presented timely and the prosecution is not continued (article 22.13(a)(4)).

not required. *Benson v. State*, 2015 Tex. App. LEXIS 9238, at *6-*7. However, in *Safety National*, the Court found that the language in article 22.13(b) imposing liability on the surety for return costs limits article 22.13(a)(5)'s application to situations where the principal's return is certain. *Safety National*, 273 S.W.3d at 163. The point of *Safety National* missed by the court of appeals is that by retaining the surety's liability for return costs when article 22.13(a)(5) applies, the Legislature intended that the principal be returned to the county of prosecution. Moreover, there is no need for language similar to article 22.13(a)(3) because application of the incarceration exoneration is not dependent on good cause for the principal's failure to appear. Article 22.13(a)(5) is not concerned about why the principal failed to appear. It is only concerned about the principal's return to the criminal justice system.

Article 22.16 also limits the surety's liability for a bond forfeiture. If, before a final judgment is rendered in the bond forfeiture suit, the principal is arrested and released on a new bond or the criminal case in which the forfeited bond was made is dismissed, the surety's liability is reduced to court costs, interest on the bond akin to prejudgment interest, and, just like article 22.13(b), "any reasonable and necessary costs to the county for the

return of the principal." Tex. Code Crim. Proc. art. 22.16(a). This same reduction of liability can also be given to the surety by the court "for other good cause shown." Tex. Code Crim. Proc. art. 22.16(b).[12] By retaining the surety's liability for return costs, both provisions require the return of the principal even though these provisions do not use the same language in article 22.13(a)(3) that the court of appeals found was required in article 22.13(a)(5) before requiring the principal's return.

A surety has been given another avenue for reducing its liability if the principal is returned to the county of prosecution. However, unlike the ones discussed above, this one can be utilized any time within two years *after* a final judgment is rendered. This mechanism is known as the special bill of review and is governed by article 22.17 of the Code of Criminal Procedure.

A surety can file a special bill of review to request, "on equitable grounds, that the final judgment be reformed and that all or part of the bond amount be remitted to the surety, after deducting the costs of court,

---

[12] The main difference between the two subsections of article 22.16, other than the basis for reducing the surety's liability, is that subsection (a) provides a mandatory reduction ("the court shall"), while subsection (b)'s reduction is discretionary ("the court in its discretion may").

***any reasonable costs to the county for the return of the principal***, and the interest accrued on the bond amount form the date of forfeiture." Tex. Code Crim. Proc. art. 22.17(a) (emphasis added). Because this statute does not specify the equitable grounds that would justify a reformation of the judgment, the courts have fashioned several factors for trial courts to consider. One of these factors is whether the surety participated in the re-arrest of the principal. Another factor is the cost and inconvenience to the State in regaining custody of the principal. *McKenna v. State*, 247 S.W.3d 716, 719 (Tex. Crim. App. 2008); *Gramercy Insurance Co. v. State*, 834 S.W.2d 379, 382 (Tex. App.–San Antonio 1992, no pet.)

Thus, the question under article 22.17 is not if the principal returned to the county of prosecution, but whether the surety helped get the principal arrested and how much it cost the State to return the principal to the county of prosecution. Since the surety remains liable for return costs under both article 22.17 and article 22.13(a)(5), the principal's return to the county of prosecution is an element of the incarceration exoneration just as it is an element of an equitable special bill of review.

Thus, in order to avoid summary judgment, Mr. Benson was required to raise a fact issue on Mr. Whipple's incarceration within 180 days of his

failure to appear and Mr. Whipple's return to Travis County. He failed to meet this burden because he did not present any evidence that Mr. Whipple was ever returned to Travis County. Thus, summary judgment was proper.

## PRAYER FOR RELIEF

Accordingly, the State of Texas respectfully requests that this Court grant this petition, reverse the decision of the Austin Court of Appeals, and affirm the judgment of the trial court.

Respectfully submitted,

DAVID A. ESCAMILLA
TRAVIS COUNTY ATTORNEY

By:    /s/ Tim Labadie
      Assistant Travis County Attorney
      State Bar No. 11784853
      P.O. Box 1748
      Austin, Texas 78767
      (512) 854-5864
      (512) 854-9316 (fax)
      tim.labadie@traviscountytx.gov

Attorneys for the State of Texas, Petitioner

## CERTIFICATE OF COMPLIANCE

By my signature below, pursuant to Tex. R. App. P. 9.4(i)(3), I hereby certify that the foregoing Petition for Discretionary Review contains 3,412 words according to the word count of the computer program used to prepare this document and is compliant as to form pursuant to Tex. R. App. P. 9.4.

*/s/ Tim Labadie*

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2015, and in accordance with Texas Rule of Appellate Procedure 9.5, a true and correct copy of the foregoing was emailed to Mr. Tom Benson at tomrbenson@gmail.com.

*/s/ Tim Labadie*

# APPENDIX

A. *Benson v. State,*
   No. 03-15-00121-CR (Tex. App.—Austin, Aug. 31, 2015)

B. *Safety National Casualty Corp. v State,*
   273 S.W.3d 157 (Tex. Crim. App. 2008)



**Tom Benson, Appellant v. The State of Texas, Appellee**

**NO. 03-15-00121-CR**

**COURT OF APPEALS OF TEXAS, THIRD DISTRICT, AUSTIN**

*2015 Tex. App. LEXIS 9238*

**August 31, 2015, Filed**

**NOTICE:** PUBLISH.

**PRIOR HISTORY:** [*1] FROM THE COUNTY COURT AT LAW NO. 7 OF TRAVIS COUNTY. NO. C-1-CV-14-002294, HONORABLE TODD T. WONG, JUDGE PRESIDING.

**DISPOSITION:** Reversed and Remanded.

**COUNSEL:** For Appellee: Mr. Tim Labadie, Assistant County Attorney, Austin, TX.

For Appellant: Mr. Tom Benson, Dallas, TX.

**JUDGES:** Before Chief Justice Rose, Justices Goodwin and Field.

**OPINION BY:** Scott K. Field

**OPINION**

This is an appeal from a final judgment in a bond-forfeiture suit. Roy Whipple, the principal, was charged with a misdemeanor offense in Travis County. Appellant Tom Benson, the surety, filed a bond conditioned on Whipple's subsequent appearance. Whipple later failed to appear in court as required. Consequently, the trial court issued a judgment nisi and declared the bond forfeited. *See Tex. Code Crim. Proc. art. 22.02*.

The State later filed a motion for summary judgment contending that it had established every element of its bond-forfeiture claim as a matter of law and asked the trial court to finalize the judgment. In response, Benson raised the affirmative defense provided by *Texas Code of Criminal Procedure article 22.13(a)(5)(A)*, which states:

> The following causes, and no other, will exonerate the

defendant and his sureties, if any, from liability upon the forfeiture taken:

The incarceration of the principal in any jurisdiction in the United States:

in the case of a misdemeanor, at the time of or not later than the 180th day after the date of the principal's failure [*2] to appear in court.

*Id. art. 22.13(a)(5)(A)*. Benson presented evidence that Whipple had been incarcerated in Las Vegas, Nevada, within 180 days of his failure to appear in Travis County.[1]

1 Specifically, Benson produced a "Custody Letter" from the Las Vegas Metropolitan Police Department confirming that Whipple had been incarcerated.

The trial court granted the State's motion for summary judgment, and this appeal followed. In his sole point of error, Benson argues that the trial court erred by granting the State's motion for summary judgment because he raised a genuine issue of material fact with respect to each element of his affirmative defense. We agree with Benson and will reverse.

**STANDARD OF REVIEW**

Although bond-forfeiture proceedings are criminal cases, appellate review of bond-forfeiture proceedings is governed by the same rules as civil suits. *See id. art. 44.44*; *Alvarez v. State, 861 S.W.2d 878, 881 (Tex. Crim. App. 1992)* (per curiam); *Mendez v. State, No. 03-12-00201-CV, 2013 Tex. App. LEXIS 13402, 2013 WL 5936624, at *1 n.1* (Tex. App.--Austin Oct. 31, 2013, no pet.) (mem. op.). The appellate court reviews a summary judgment de novo and it takes as true all evidence favorable to the nonmoving party. *Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005)*. When moving for summary judgment in a bond-forfeiture case, the State has the burden of establishing that there is no genuine issue of material fact as to any [*3] of the essential elements of the State's cause of action and that it is entitled to judgment as a matter of law. *Alvarez, 861 S.W.2d at 880*. The elements of the State's cause of action are the following: (1) there was a valid bond; (2) the defendant's name was distinctly called at the courthouse door; and (3) the defendant failed to appear within a reasonable time of that call. *See id. at 881* (construing *Tex. Code Crim. Proc. art. 22.02*). The burden of proof on the second and third elements is satisfied by the judgment nisi. *Id.* Once the State establishes through the bond and the judgment nisi that there are no genuine issues of material fact, the burden shifts to the defendant to raise a fact issue on the affirmative defense of

exoneration. *Hill v. State, 955 S.W.2d 96, 100 (Tex. Crim. App. 1997).* A party seeking to avoid summary judgment by virtue of an affirmative defense bears the burden of raising a material issue of fact on each element of that defense. *See id. at 101* (citing *Brownlee v. Brownlee, 665 S.W.2d 111, 112 (Tex. 1984)).*

This dispute requires us to interpret *Texas Code of Criminal Procedure article 22.13.* The meaning of a statute is a legal question, which we review de novo. *Entergy Gulf States, Inc. v. Summers, 282 S.W.3d 433, 437 (Tex. 2009).* When construing a statute, our primary objective is to ascertain and give effect to the legislature's intent. *First Am. Title Ins. Co. v. Combs, 258 S.W.3d 627, 631-32 (Tex. 2008).* In determining legislative intent, we first consider the plain language of the statute. *General Motors Corp. v. Bray, 243 S.W.3d 678, 685 (Tex. App.--Austin 2007, no pet.).* When statutory [*4] text is clear, it is determinative of legislative intent, unless enforcing the plain meaning of the statute's words would produce an absurd result. *Summers, 282 S.W.3d at 437.* Only when the statutory text is ambiguous do we "'resort to rules of construction or extrinsic aids.'" *Id.* (quoting *In re Estate of Nash, 220 S.W.3d 914, 917 (Tex. 2007)).*

## DISCUSSION

In arguing that the trial court erred in granting summary judgment on the State's claim, Benson admits that the State presented a prima facie case for bond forfeiture by producing evidence of the bail bond and judgment nisi. *See Alvarez, 861 S.W.2d at 880-81* ("The essential elements of the State's cause of action in a bond forfeiture proceeding are the bond and the judicial declaration of the forfeiture of the bond, which is the judgment nisi."). However, Benson contends that the trial court erred in granting summary judgment because he presented evidence sufficient to raise a fact issue as to each of the elements of the affirmative defense provided by *Texas Code of Criminal Procedure article 22.13(a)(5)(A).* According to Benson, this defense requires four elements: The principal, (1) who is charged with a misdemeanor, (2) is incarcerated (3) in any jurisdiction in the United States (4) at the time of or not later than the 180th day after the date of the principal's failure to appear in court. [*5] Benson asserts that he has raised a fact issue as to each of these four elements because he presented evidence that Whipple was charged with a misdemeanor in Travis County and was later incarcerated in Las Vegas within 180 days from the date he failed to appear in court.

In response, the State does not contend that Benson failed to raise a fact issue on the four elements of his *article 22.13(a)(5)* defense as identified by Benson. Instead, it argues that *article 22.13(b)* adds a required element to Benson's defense--that the principal be returned to the county of prosecution before the surety can be exonerated from

liability. Specifically, the State points out that *article 22.13(b)* provides:

A surety exonerated under Subdivision 5, Subsection (a), remains obligated to pay costs of court, any reasonable and necessary costs incurred by a county to secure the return of the principal, and interest accrued on the bond amount from the date of the judgment nisi to the date of the principal's incarceration.

*Tex. Code Crim. Proc. art. 22.13(b)*. The State further argues that Benson did not raise an issue of fact concerning this element of his defense under *article 22.13(a)*.

Because the State has not disputed the evidence supporting the other elements of Benson's defense, and because Benson has not [*6] alleged that he returned Whipple to Travis County, our resolution of this appeal turns on a single question of statutory construction: whether *article 22.13(a)(5)*, read in conjunction with *article 22.13(b)*, requires that the principal be returned to the county of prosecution in order for the defendant and surety to be exonerated from liability upon the forfeited bond. This appears to be an issue of first impression in Texas.

==The plain language of *article 22.13(a)* and *article 22.13(b)* compels us== ==to conclude that the requirements of *subsection (b)* are not intended to be included as elements of the cause of exoneration under *article 22.13(a)(5)*.== *Article 22.13(a)* lists five exclusive means of exoneration from bond forfeiture. *See id. art. 22.13(a)* ("The following causes, and no other, will exonerate the defendant and his sureties, if any, from liability upon the forfeiture taken."). Only one of these five causes-- *article 22.13(a)(3)*--explicitly makes the principal's return a requirement. *See id. art. 22.13(a)(3)* (allowing for the surety's exoneration if principal's failure to appear in court was because of "some uncontrollable circumstance" but only if "such principal appear before final judgment on the bond to answer the accusation against him, or show sufficient cause for not so appearing"). ==If the legislature had intended return of [*7] the principal to be an element of the defense that *subsection (a)(5)(A)* provides, it could have included it in that subsection, as well. It certainly knew how to create such a requirement, as evidenced by *article 22.13(a)(3)*, but chose not to do so here.== *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) ("We presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen."); *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 175 (Tex. 1980) (explaining that because legislature knew how to include terms within

statutory definition and did not do so, statutory definition did not include terms "in light of [the term's] contemporaneous inclusion of the same terms in a separate provision").

Rather than adding a requirement to exoneration under *article 22.13(a)(5)*, *article 22.13(b)* assumes that exoneration has already occurred. *Subsection (b)* begins by stating that "a surety exonerated under Subdivision 5, Subsection (a)" remains responsible for court costs, reimbursement of the costs incurred by the county to secure return of the principal, and interest on the bond amount. *Tex. Code Crim. Proc. art. 22.13(b)*. This language does not make exoneration conditional on payment of these amounts; instead, it assumes exoneration and adds these amounts as further obligations of the surety once exoneration [*8] has occurred. The State appears to take the position that return of the principal is a condition precedent to exoneration; however, it ignores the fact that payment of the county's costs in returning the principal is but one of three different categories of costs listed. There is nothing in the language of the statute that remotely suggests the requirement that the surety pay costs for return of the principal, by itself, somehow becomes an element of the cause of exoneration.[2]

2    Our interpretation of *article 22.13(b)* as not requiring return of the principal is bolstered by the fact that *article 17.16*, which

contains very similar language, does not require the principal's return in order for the surety to be relieved from liability before the bond is forfeited. *Article 17.16* provides that "[a] surety may before forfeiture relieve the surety of the surety's undertaking by . . . delivering to the sheriff of the county in which the prosecution is pending and to the office of the prosecuting attorney an affidavit stating that the accused is incarcerated in federal custody, in the custody of any state, or in any county of this state." *Tex. Code Crim. Proc. art. 17.16(a)(2)*. The article also provides that, "[f]or the purposes of Subsection (a)(2) of this article, the bond is [*9] discharged and the surety is absolved of liability on the bond on the verification of the incarceration of the accused." *Id. art. 17.16(e)*. In other words, there is no requirement that the principal be returned to the county of prosecution before the surety is relieved of liability under *article 17.16*. *See Allegheny Cas. Co. v. State, 163 S.W.3d 220, 226 (Tex. App.--El Paso 2005, no pet.)* ("There is no requirement that the surety notify the trial court, or anyone else, that the bond has been surrendered or to request that a detainer or arrest warrant be entered so that the principal is subject to return to the sending

jurisdiction.") (citing *Castaneda v. State, 138 S.W.3d 304, 308 (Tex. Crim. App. 2003)*).

Yet *article 17.16* also states, "A surety is liable for all reasonable and necessary expenses incurred in returning the accused into the custody of the sheriff of the county in which the prosecution is pending." *Tex. Code Crim. Proc. art. 17.16(g)*. This language is almost identical to that of *article 22.13(b)* upon which the State relies. In *article 17.16*, the fact that a surety remains liable for any costs incurred in the return of the principal to the county of prosecution does not mean that this return is a requirement for the surety's release from liability. This language further indicates that the legislature does not require a surety to return the principal before being released from liability on the bond.

The State argues [*10] that the court of criminal appeals opinion in *Safety National*, in which the State challenged the constitutionality of *articles 22.13(a)(5)* and *22.16(a)*, supports its construction of *article 22.13*. *See Safety Nat'l Cas. Corp. v. State, 273 S.W.3d 157 (Tex. Crim. App. 2008)*. However, nothing in *Safety National* states that the principal must have already been returned in order for the surety to be exonerated from liability. As the court of criminal appeals explained, "[t]he point of *Article 22.13(a)(5)* is that, if the defendant is incarcerated when or

shortly after he failed to appear, securing his return to appear is quite easy and does not require the assistance of a bondsman." *Id. at 164*. This statement underscores the court of criminal appeals's reasoning that the return of the principal is certain when he is incarcerated within the United States because the State, and not the surety, has the authority to secure his return. *Cf. Tex. Code Crim. Proc. art. 17.16(c)* (providing mechanism by which the State can secure return of the principal). We conclude that *Safety National* provides no support for the State's interpretation of *article 22.13*.[3]

3   Relying on legislative history, the State also argues that *article 22.13* fails to fulfill the primary purpose of bail bonds unless it requires that the principal be returned to the county of prosecution. However, because *article 22.13* is not ambiguous, we need [*11] not address legislative history. *See Entergy Gulf States, Inc. v. Summers, 282 S.W.3d 433, 437 (Tex. 2009)*.

Because we conclude that neither *article 22.13(a)(5)* nor *article 22.13(b)* requires that the principal be returned to the county of prosecution in order for the surety to be exonerated from liability for a forfeited bond, and because we further conclude that Benson has raised a genuine issue of material fact on every element of his affirmative defense under

*article 22.13(a)(5)*, we sustain Benson's point of error.

## CONCLUSION

We reverse the trial court's grant of summary judgment and remand this cause to the trial court for further proceedings consistent with this opinion.

Scott K. Field, Justice

Before Chief Justice Rose, Justices Goodwin and Field

Reversed and Remanded

Filed: August 31, 2015

Publish



## SAFETY NATIONAL CASUALTY CORP., AGENT MANUEL LEYVA D/B/A ROCKY BAIL BONDS, Appellant v. THE STATE OF TEXAS

### NO. PD-0413-07

### COURT OF CRIMINAL APPEALS OF TEXAS

### *273 S.W.3d 157*; *2008 Tex. Crim. App. LEXIS 641*

### May 14, 2008, Delivered

**NOTICE:** PUBLISH

**SUBSEQUENT HISTORY:** Rehearing denied by *In re Safety Nat'l Cas. Corp., 2008 Tex. Crim. App. LEXIS 1004 (Tex. Crim. App., Aug. 20, 2008)*

**PRIOR HISTORY:** [**1]
ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE EIGHTH COURT OF APPEALS EL PASO COUNTY.
*Safety Nat'l Cas. Corp. v. State, 225 S.W.3d 684, 2006 Tex. App. LEXIS 10305 (Tex. App. El Paso, 2006)*

**COUNSEL:** For APPELLANT: Ken W. Good, Tyler, TX.

For STATE: Arne Schonberger, ASST. COUNTY ATTORNEY, El Paso, TX; Jeffrey L. Van Horn, STATE'S ATTORNEY, Austin, TX.

**JUDGES:** MEYERS, J., delivered the opinion of the Court, in which KELLER, P.J., and PRICE, WOMACK, JOHNSON, KEASLER, HERVEY, HOLCOMB, and COCHRAN, JJ., joined. COCHRAN, J., filed a concurring opinion.

**OPINION BY:** Meyers

**OPINION**

[*158] Appellant, Safety National, sought exoneration from the forfeiture of a bond due to the incarceration of the defendant. *See Article 22.13(a)(5) of the Texas Code of Criminal Procedure.* [1] The trial court entered a judgment in favor of the State for one half the amount of the original bond and entered findings of fact concluding that *Article 22.13 (a)(5)* unconstitutionally interferes with the trial court's discretion and with the finality of judgments. [2] Appellant appealed, and the court of appeals

affirmed the judgment of the trial court. *Safety National v. State, 225 S.W.3d 684 (Tex. App.--El Paso 2006)*. We granted review to consider the constitutionality of *Articles 22.13(a)(5)* and *22.16(a)*. We hold that the statutes are constitutional and remand the cause to the trial court.

1   Unless otherwise specified, all future references to Articles refer to the Texas Code of Criminal Procedure.

2   The relevant [**2] part of *Article 22.13* states:

(a) The following causes, and no other, will exonerate the defendant and his sureties, if any, from liability upon the forfeiture taken:

5. The incarceration of the principal in any jurisdiction in the United States:

(A) in the case of a misdemeanor, at the time of or not later than the 180th day after the date of the principal's failure to appear in court; or

(B) in the case of a

felony, at the time of or not later than the 270th day after the date of the principal's failure to appear in court.

**FACTS**

Appellant posted a $ 10,000 bond on behalf of Willie Guerrero, who was charged [*159] with felony theft and was due to appear for a hearing on March 25, 2004. When a Safety National employee learned that Guerrero failed to appear at the hearing, she located him and informed the court coordinator that Guerrero would appear that afternoon. Instead, the coordinator told Appellant to bring Guerrero to court the following morning. Guerrero appeared the following morning and gave the trial judge several reasons for his failure to appear at his scheduled time, including the weather, car trouble, and that he had forgotten. The trial judge was offended by Guerrero's attitude and, [**3] as a result, entered a judgment nisi forfeiting the bond and placed Guerrero in custody. He was later released on a new bond. At the final hearing on the judgment nisi, Appellant argued that it was entitled to exoneration under *Code of Criminal Procedure Article 22.13(a)(5)* because Guerrero was

incarcerated the day after his failure to appear. The court entered a judgment for the State for $ 5,000 plus court costs and entered findings of fact and conclusions of law stating that *Article 22.13(a)(5)* is unconstitutional.

The trial court included the following in its findings of fact and conclusions of law: *Article 22.13(a)(5)* affects the timing and the finality of judgments and interferes with the core powers of the court and the administration of justice; the statute hampers the discretion of the court in controlling the time of trials and judgments because "to avoid multiple post-judgment actions, further tying up its docket, it would have to wait 9 months to enter a final judgment" and it places virtual time and amount limits out of the discretion of the court; *Article V, Sections 1* and *8, of the Texas Constitution* [3] vest power over bond forfeitures in the judicial branch and *Article 22.13(a)(5)* [**4] interferes with that power; the stated purpose of a bond is to have an orderly docket by having defendants appear on time and for sureties to assist with that-to allow a defendant to interfere with the court's docket by not showing up for trial "without forfeiture of any portion of the bond would cause future, similar behavior by the defendants in this case and by other Sureties and accused persons"; and, taking away "discretion to order payment of all or part of a bond vitiates the purpose of a bond and would create havoc with the Court's calendar,

allowing defendants to wonder [sic] in at a time and date of their own choosing."

3  *See Article V, § 1* ("The judicial power of this State shall be vested in one Supreme Court, in one Court of Criminal Appeals, in Courts of Appeals, in District Courts, in County Courts, in Commissioners Courts, in Courts of Justices of the Peace, and in such other courts as may be provided by law. The Legislature may establish such other courts as it may deem necessary and prescribe the jurisdiction and organization thereof, and may conform the jurisdiction of the district and other inferior courts thereto."); *Article V, § 8* ("District Court jurisdiction consists [**5] of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body. District Court judges shall have the power to issue writs necessary to enforce their jurisdiction.The District Court shall have appellate jurisdiction and general supervisory control over the County Commissioners Court, with such exceptions and under such regulations as may be prescribed by law.").

Appellant appealed, arguing that the trial court's failure to exonerate was error and that the legal conclusions regarding *Article 22.13(a)(5)* were erroneous. The court of appeals overruled these arguments and considered only Appellant's argument that it was entitled to mandatory remittitur under *Article 22.16(a)* because Guerrero was released on a new bond in [*160] the case. The court of appeals held that the current version of *Article 22.16(a)* violates *Article II, section 1, of the Texas Constitution* [4] because it provides for mandatory remittitur at any time prior to final judgment if the defendant principal is released on new bail [**6] in the case or the case for which bond is given is dismissed. In doing so, the legislature has removed the trial court's discretion to remit the bond in the event new bail is given or the criminal case is dismissed. *Safety National, 225 S.W.3d 684, 691-92*.

> 4 *Article II, § 1*, discusses the Division of Powers and states, "The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly

attached to either of the others, except in the instances herein expressly permitted."

Appellant filed a petition for discretionary review asking us to determine whether the court of appeals properly found that *article 22.16(a) of the Texas Code of Criminal Procedure* is unconstitutional based on a violation of the separation-of-powers provision in the Texas Constitution. We additionally granted review on our own motion to determine whether *article 22.13(a)(5) of the Texas Code of Criminal Procedure* is [**7] unconstitutional based on a violation of the separation-of-powers provision in the Texas Constitution.

## ARGUMENTS OF THE PARTIES

Appellant argues that *articles 22.13* and *22.16* do not order a trial court to alter a final judgment and do not tell the trial court when it can enter a final judgment. Rather, *Article 22.13* provides affirmative defenses for the surety, and *Article 22.16* sets out the limited situations wherein the surety may seek remittitur of the bond prior to final judgment. Even after final judgment, Chapter 22 allows a special procedure under which the surety may seek the return of a portion of the bond amount. *See Article 22.17*. The legislature amended Chapter 22 in 2003, removing the limitations on the trial court's ability to enter a final judgment and setting out the situations in which a bondsman is entitled to a full remittitur if the request is made while the court has jurisdiction

over the case. The time limits in *Article 22.13(a)(5)* apply to the surety, not to the trial court. They are an expiration date on the surety's ability to use the defense that the principal is incarcerated, not a mandate telling the state when to enter a judgment; thus, the time periods do [**8] not prevent the trial court from entering a final judgment at any time. *Article 22.16* also does not place time limits or restrictions on a trial court's ability to enter a final judgment. It provides for mandatory remittitur prior to the entry of the final judgment only in the limited situation of the principal being released on new bail in the case or if the case is dismissed, and for discretionary remittitur for good cause shown.

The time limits in the statutes simply place the burden on bondsmen to file a motion for remittitur while the court still has jurisdiction over the case and do not place restrictions on the court's ability to enter judgment, therefore, the statutes do not violate the separation-of-powers doctrine of the Texas Constitution. Finally, Appellant argues that the legislature has indicated an intent to reward bondsmen who assist the state in returning to custody principals who fail to appear, because the purpose of bail is to secure the presence of the accused, not to be a revenue device or to be punitive or to substitute for [*161] a fine. Without bondsmen, the court dockets would be even worse, and the state would either have to hire more officers to seek out defendants [**9] who are on bond and fail to appear or build more jails to hold those who are not released on bond.

The State argues that, through *Articles 22.13(a)(5)* and *22.16*, "the Legislature told the Court what judgment it must enter and in so doing has improperly exercised power reserved to the judicial branch of government to hear controversies and apply discretion to determine the amount of the judgment" and "by requiring a zero judgment in all cases, no matter what the circumstances, (i.e. the amount of the bond, the reason for missing court and the delay caused), the Legislature is improperly usurping a judicial function." This removes the court's power to consider facts related to the reason for the failure to appear and to enter a judgment based on those facts. Courts are also prevented by *Article 22.13(a)(5)* from entering a judgment for nine months because there is no guidance for the court concerning situations wherein a final judgment is given prior to nine months and the defendant is returned after the judgment but before the nine months have expired. This interferes with the court's ability to control its docket because the court's judgment would not actually be final until 270 days [**10] had passed since, even if final judgment were entered, it would be nullified or would have to be reformed if the defendant became incarcerated within that time period. The State claims that subsequent appearance should not exonerate a forfeiture because that

would allow defendants to keep missing hearings until there are no witnesses or evidence against him, and therefore, there should be a penalty for failure to appear at the designated time. Complete remission of the forfeiture would mean that the defendant is not really bound to appear and can create continuances at will. Because the court has the discretion to set the amount of the bail, and the purpose of a bond is to assure the fulfillment of an obligation to appear in court and to pay a penalty if that obligation is not fulfilled, the State asserts that it violates the separation-of-powers doctrine for the Legislature to make the bond unenforceable through forced exoneration and for the surety to have the same risk whether the court sets a high or low bond. As such, the Legislature has made failure to appear an offense without a penalty, which interferes with the orderly processes of the courts. The State points out that, in [**11] *Lyles v. State, 850 S.W.2d 497, 501 (Tex. Crim. App. 1993)*, this Court said that the old statute requiring mandatory remittitur at any time prior to final judgment removed a trial court's discretion. Under the same reasoning, forcing a court to enter a zero judgment against a bond also violates separation of powers.

## CASE LAW

The former version of *Article 22.16* encompassed both the issues of the principal's incarceration and the principal's release on new bail. The

legislature amended *Article 22.16* in 2003 and moved the section that addressed the principal's incarceration to *Article 22.13*. In *Armadillo Bail Bonds v. State 802 S.W.2d 237 (Tex.Cr.App.,1990)*, *State v. Matyastik, 811 S.W.2d 102 (Tex. Crim. App. 1991)*, and *Lyles,* we held that the former statute was unconstitutional.

Considering the former version of *Article 22.16*, which placed time restrictions upon when a final judgment could be entered, [5] *Armadillo* held that the restrictions [*162] on the court's right to determine when to decide a case violated the separation-of-powers provision of the Texas Constitution. We stated, "We have held repeatedly that the separation of powers provision may be violated in either of two ways. First, it [**12] is violated when one branch of government assumes, or is delegated, *to whatever degree,* a power that is more 'properly attached' to another branch. The provision is also violated when one branch *unduly* interferes with another branch so that the other branch cannot *effectively* exercise its constitutionally assigned powers." *Armadillo, 802 S.W.2d at 239* (internal citations omitted) (emphasis in original). We explained that the judicial branch has the power to hear evidence, decide issues of fact, decide questions of law, enter a final judgment on the facts and the law, and execute the final judgment or sentence, and the Legislature has authority over judicial administration, as long as it does not infringe upon the

substantive power of the judicial branch. *Id. at 239-240*. In *Matyastik,* we extended our holding in *Armadillo,* eliminating the time restrictions in *Article 22.16(c)* and determining that remittitur may occur anytime between forfeiture and the entry of a final judgment. *Matyastik, 811 S.W.2d at 104.* We considered this issue again in *Lyles v. State* and held that the mandatory remittitur provisions of *Article 22.16* are void, but because *Article 22.16(d)* allows the trial court to [**13] remit all or part of the bond at the court's discretion prior to the entry of a final judgment, that subsection does not violate the separation-of-powers. *850 S.W.2d at 501*.

5  Former *Article 22.16* stated:

(a) After forfeiture of a bond and before the expiration of the time limits set by Subsection (c) of this article, the court shall, on written motion, remit to the surety the amount of the bond after deducting the costs of court, any reasonable costs to the county for the return of the principal, and the interest accrued on the bond amount as provided by Subsection (e) of this article if:

(1) the principal is incarcerated in the county in which the prosecution is pending;

(2) the principal is incarcerated in another jurisdiction and the incarceration is verified as provided by Subsection (b) of this article;

(3) the principal is released on new bail in the case;

(4) the principal is deceased; or

(5) the case for which bond was given is dismissed.

(b) For the purposes of Subsection (a)(2) of this article, a surety may request confirmation of the incarceration of his principal by written request to the law enforcement agency of the county where prosecution is pending. A law enforcement agency [**14] in this state that receives a request for verification shall notify the court in which prosecution is pending and the surety whether or not the principal is or has been incarcerated in another jurisdiction and the date of the incarceration.

(c) A final judgment may be entered against a bond not earlier than:

(1) nine months after the date the forfeiture was entered, if the offense for which the

bond was given is a misdemeanor; or

(2) 18 months after the date the forfeiture was entered, if the offense for which the bond was given is a felony.

(d) After the expiration of the time limits set by Subsection (c) of this article and before the entry of a final judgment against the bond, the court in its discretion may remit to the surety all or part of the amount of the bond after deducting the costs of court, any reasonable costs to the county for the return of the principal, and the interest accrued on the bond amount as provided by Subsection (e) of this article.

(e) For the purposes of this article, interest accrues on the bond amount from the date of forfeiture in the same manner and at the same rate as provided for the accrual of prejudgment interest in civil cases.

## ANALYSIS

In discussing [**15] the reasons for the 2003 amendments to *Articles 22.13* and *22.16*, the Legislature stated that, "the state is more interested in having the defendant appear than in receiving forfeited bond money. Setting time limits on when bonds would be forfeited would result in more defendants ultimately appearing in [*163] court because bondsmen would have a financial incentive to produce the principal many weeks after he or she originally failed to appear in court . . . [and] would give bondsmen consistency for principals who were incarcerated, while allowing a judge to adjust the time period as needed in a particular case." SENATE COMM. ON CRIMINAL JURISPRUDENCE, BILL ANALYSIS, Tex. S.B. 1336, 78th Leg., R.S. (2003).

As we stated in *State v. Sellers, 790 S.W.2d 316, 321 (Tex. Crim. App. 1990)*, a judgment nisi alone does not authorize recovery of a bond amount by the State. A judgment nisi is a provisional judgment that is not final or absolute, but may become final. *See Article 22.14*. Nisi means "unless," so a judgment nisi is valid unless a party shows cause why it should be withdrawn. In the case before us, Appellant argues that there are two reasons that the judgment should be withdrawn. First, the [**16] defendant was incarcerated the day after his initial failure to appear, which, under *Article 22.13(a)(5)*, triggers exoneration from the forfeiture of the bond. Second, the defendant was released on new bond in the same case after he was arrested on the warrant resulting from the judgment nisi, which is a reason for remittitur prior to final judgment under *Article 22.16 (a)*.

The State reads *Article 22.13(a)(5)* to mean that the court cannot enter a final judgment for nine months because then it would have "multiple post-judgment

actions" if the defendant returned after final judgment but within nine months after his failure to appear. However, *Article 22.13* does not say that the trial court must wait until the time in subsection (a)(5) lapses to enter a final judgment. The statute does not prohibit the entry of a judgment or dictate when the judgment must be entered. In fact, *Article 22.13* says nothing about the entry of a final judgment--it simply provides the surety with a defense if the defendant is incarcerated within nine months after he fails to appear. If that term ends before the court enters a final judgment on the bond, under *Article 22.13*, the court must remit the amount of [**17] the bond.

The State also implies that *Article 22.13(a)(5)* is triggered by the defendant's incarceration, whether or not he is returned, and that he will be exonerated without ever appearing in court, stating that "*Article 22.13(a)(5)* requires a zero judgment regardless of the crime for which the defendant is arrested and without the actual return of the Defendant-Principal to the County of his prosecution." (Emphasis in Respondent's Brief on the Merits). This is simply incorrect. As specifically stated in *Article 22.13(b)*, a surety exonerated under subsection *(a)(5)* remains obligated to pay costs incurred by a county to secure the return of the principal. Similarly, the court must remit the amount of the bond under *Article 22.16* if the defendant has been given new bond *in the same case* or the case

has been dismissed. It makes sense that when a new bond is issued in a case, the old bond should be remitted; this does not mean that a defendant can be on bond somewhere else for some other case and be entitled to full remittitur. Both Articles *22.13* and *22.16* require remittitur only in specific, limited situations--situations in which the return of the defendant is certain (because the defendant [**18] is incarcerated elsewhere), the return is secured by another bond in the same case, or the return is unnecessary (because the case has been dismissed). [6]

6    We note that there are other situations in the Code of Criminal Procedure in which the legislature has limited the circumstances under which courts may provide a requested remedy. For example, in *Articles 11.07, § 4* and *11.071, § 5*, the legislature tells us under what limited conditions we may consider a subsequent application for writ of habeas corpus.

[*164]    The point of *Article 22.13(a)(5)* is that, if the defendant is incarcerated when or shortly after he failed to appear, securing his return to appear is quite easy and does not require the assistance of a bondsman. Because the county would incur the cost to transfer the defendant from another jurisdiction, *Article 22.13(b)* makes the surety liable for any costs incurred by the county to secure the return of the defendant. But the statute does not

require a court to wait nine months before entering a final judgment, and thus, does not interfere with a court's timing or finality of judgments. In this case, Guerrero was returned the day after his failure to appear and was in court prior [**19] to the forfeiture of the bond. He was placed in custody at the same time the court entered the judgment nisi forfeiting the bond. And Appellant requested remittitur under *Article 22.13* prior to the entry of final judgment. Therefore, the State's hypothetical regarding *Article 22.13* forcing the trial court to wait nine months before entering judgment does not apply to this situation.

We disagree with the State's argument that there is no guidance for the court concerning situations wherein a final judgment is given prior to nine months and the defendant is returned after the judgment but before the nine months have expired. *Article 22.17* specifically allows for a special bill of review up to two years after a final judgment has been entered, which may include a request that all or part of the forfeited bond be returned. The State is also incorrect that complete remission of the forfeiture would mean that the defendant is not really bound to appear and can create continuances at will and that the Legislature has made failure to appear an offense without a penalty. There are penalties, such as contempt and additional criminal charges, that can be pursued to punish a defendant for failure [**20] to appear, or the court

can require a cash-only bond in lieu of a surety bond. *See Article 23.05(a).* And bail is not intended to be punitive or to be a revenue device. Bail bonding is a business; therefore, having to pay court costs and interest for the time during which a defendant fails to appear is incentive for the bondsman to secure the attendance of the defendant at his scheduled hearing. The surety does not have the same risk when the court sets a high bail as it has when the court sets a low one, because a high bond has higher interest for the time it takes the surety to return the defendant.

## CONCLUSION

*Articles 22.13* and *22.16* do not interfere with the trial court's ability to enter final judgment, nor do they dictate the time frame within which a trial court may enter a final judgment. The statutes do not violate the separation-of-powers doctrine and thus are not unconstitutional. The decision of the court of appeals is reversed, and the cause is remanded to the trial court.

Meyers, J.

Delivered: May 14, 2008

Publish

## CONCUR BY: COCHRAN

## CONCUR

COCHRAN, J., filed a concurring opinion.

OPINION

The State discusses several valid reasons why *Article 22.13*, dealing with the exoneration of a bail bond, may [**21] be a counterproductive statute that ties the hands of judges and thwarts the purpose of having a surety in the first place. Nonetheless, I agree with the majority that these deficits do not rise to the level of an unconstitutional [*165] violation of the separation-of-powers doctrine. These are matters that are best left to the Legislature and to local governments that may increase their reliance upon non-profit Pretrial Services programs. The majority aptly notes, "Bail bonding is a business[.]" [1] Indeed it is. To the extent that the interests of the bail bond business and the needs of the criminal justice system are not on the same track, local and state governments are free to make appropriate adjustments. Courts do not decide the wisdom of such laws, they decide only their constitutionality.

1  Majority Op. at 13.

I therefore join the majority opinion.

Filed: May 14, 2008

Publish